**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BARRY PAUL DOMINIQUE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-0341** |
| **R. PETIE NEAL, ET AL.** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    Factual and Procedural Background

The plaintiff, Barry Paul Dominique, Jr. ("Dominique"), is a convicted inmate housed in the Terrebonne Parish Criminal Justice Complex ("TPCJC"). He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Terrebonne Parish Sheriff Jerry Larpenter, Medical Director R. Petie Neal, and Lieutenant T. Schwausch, seeking monetary and injunctive relief.

Dominique alleges that the medical staff at TPCJC makes fun of inmates and does not have the inmates' best interest in mind. He also claims that they have refused to give him his medication between "10/27/19 to 12/18/20" despite having all of his medical records. He also complains that the jail is unsanitary and needs black mold removed from the dorms. He also claims that he is served food, medication, mail and other items through the same hatch hole, which is only cleaned

on laundry day.  He also indicates that the kitchen serves bread despite knowing it has been gnawed on by rats.

Dominique further complains that the jail lacks religious literature and bibles.  He also claims that he has to listen to bible study through the hatch hole in his cell door, and he cannot hear because of other noise in the dorm.

As redress, he seeks to have the facility changed to treat inmates properly and address inmate complaints and monetary compensation for his pain and mental anguish.  He also requests additional medical care be provided.

Attached to his complaint are several grievance complaints and responses summarized here.  On October 11, 2019, Dominique filed an inmate grievance form requesting an appointment to be seen for his jaw which he broke during a seizure days before he was jailed.[1]  He stated that he had been taking antibiotics and is suffering from severe pain.  On October 17, 2019, R. Petie Neal responded stating that Dominique was evaluated by the dentist for this issue on October 16, 2019.

On October 27, 2019, Dominique filed a grievance form seeking follow-up care after his hospitalization for a suicide attempt and complaining of stomach pain and bloody stools.[2]  He requested to be taken to the hospital because he had razors in his intestines.  On October 28, 2019, Mr. Neal responded indicating that x-rays showed the presence of an object and he was referred to Leonard J. Chabert Medical Center.

---

[1]Rec. Doc. No. 4-2, p.8.

[2]Rec. Doc. No. 4-2, p.1.

On December 17, 2019, Dominique filed a grievance complaint requesting an orthopedic appointment for hip pain related to a prior hip replacement and complained that Advil was not helping.[3]  On December 18, 2019, Mr. Neal responded stating that Dominique's records had been received for review by the doctor and he would be seen on the next available date.

On December 18, 2019, Dominique filed a grievance complaint asking for "ARP" (a/k/a Administrative Remedy Procedure) forms so he could complain about medical care and the chaplain.[4]  On December 19, 2019, Lt. T. Schwausch replied advising Dominique that the form he used was an ARP form.  That same day, Dominic indicated his intent to appeal stating that he was denied his religious rights, psychiatric medication, and pain medication.  He also complained that he is always told to see the doctors and nothing is done.  He also claimed that there was no religious studies or materials provided.  Lt. Schwausch replied advising Dominique to resubmit a new form as to each individual and specific grievance.

On December 21, 2019, Dominique filed two grievance complaints.  In the first, he requested religious reading materials and to have a space to convene for religious services and masses, instead of listening through a hatch hole.[5]  In the second, he complained that the jail was unsanitary because the food was served through the hatch hole that was not cleaned for two weeks.[6]  He also complained that the food was served from trays not food warmers and guards serve it without wearing gloves.  On January 15, 2020, the first complaint was rejected for lack of substantial evidence and instructions that bibles could be purchased from the commissary or

---

[3]Rec. Doc. No. 4-2, p.7.

[4]Rec. Doc. No. 4-2, p.5.

[5]Rec. Doc. No. 4-2, p.3.

[6]Rec. Doc. No. 4-2, p.6.

requested if indigent.[7]    That same day, Lt. Schwausch responded to the second complaint indicating that the hatch holes are cleaned daily by the floor crew and the food service meets board of health guidelines for preparation and service.[8]

On December 23, 2019, Dominique filed a grievance complaint asking that he be allowed to speak to someone other than Nurse Dominic to get his medication because she always tells him that his family has to bring it to him.[9] He claims that when his sister brought medicine, they would not give it to him. He also complained that, when he went for x-rays, the medical staff laughed and joked about him having swallowed a metal screw and razors. He also requested medication for his mental health issues. Mr. Neal responded on December 23, 2019, that he would discuss Dominique's his complaints with the staff. He also stated that he was present when the x-rays were taken and did not hear anyone make jokes about the situation.

On January 9, 2020, Dominique filed a grievance complaint claiming he filed several medical request forms to get different medication for his back and hip pain and requesting an appointment with an orthopedist for follow-up after a hip replacement.[10] On January 10, 2020, Mr. Neal responded stating that he reviewed Dominique's chart and found he was not compliant with the morning dosage of his medication prescribed twice a day. He also indicated that a same day appointment was requested and they were waiting to hear back from the Department of Corrections. That same day, Dominque indicated his intent to appeal because the medication he was prescribed does not help his pain.

---

[7]Rec. Doc. No. 4-2, p.3.

[8]Rec. Doc. No. 4-2, p.6.

[9]Rec. Doc. No. 4-2, p.4.

[10]Rec. Doc. No. 4-2, p.2.

II.    **Standards for Frivolousness Review**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is

required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a

determination that they are frivolous.  The Court has broad discretion in determining the frivolous

nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other*

*grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte*

dismiss an action merely because of questionable legal theories or unlikely factual allegations in

the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in

fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th

Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless

legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not

exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly

baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v.*

*Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Thus, the Court must

determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly

baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v.*

*Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

III.    **Analysis**

A.    **Supervisory Liability**

Dominique named Sheriff Larpenter as a defendant in his role as Terrebonne Parish Sheriff.

Dominique does not allege that Sheriff Larpenter was personally involved in or aware of his

complaints or his medical care.  The claims against the Sheriff are frivolous and otherwise fail to state a claim.

To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson,* 454 U.S. 312 (1981).  Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983.  Thus, a supervisory official, like Sheriff Larpenter, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999);  *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").  A defendant would be liable under § 1983 only if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

In this case, Dominique does not allege that the Sheriff was personally involved in handling his complaints or medical care or personally advised of the alleged unsanitary conditions to which he claims he was exposed.  He also has not alleged that he has suffered any constitutional violation or physical injury directly resulting from any order, training, or other policy implemented by the Sheriff that would create a vicarious liability under § 1983.  *See  Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).  There is no basis here for supervisory liability under § 1983.

Dominique's claims against Sheriff Larpenter as a supervisory official over the prison and its staff are frivolous and otherwise fail to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

**B.      Grievance Responses**

Broadly construing his claims, Dominique seeks to hold Mr. Neal and Lt. Schwausch liable under § 1983 due to his dissatisfaction with their responses to his grievance complaints. The claims are frivolous.

Inmates generally have no constitutional right under the First or Fourteenth Amendments to an effective grievance procedure. *See Wilcox v. Johnson,* 85 F.3d 630, 1996 WL 253868 at *1 (6th Cir. May 13, 1996)(Table, Text in Westlaw); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Buckley v. Barrow,* 997 F .2d 494, 495 (8th Cir.1993); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463, 1991 WL 22009 at *1 (6th Cir. Feb. 22, 1991) (Table, Text in Westlaw). In other words, there is no constitutional guarantee that the inmate will receive a response from or be satisfied with the responses by the prison officials. *Id.*; *see also Lijadu v. INS*, No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees 'do not have a constitutionally protected right to a grievance procedure' - much less one that complies with their own personal preferences.") Dominique's dissatisfaction with the responses he received in the grievance process is insufficient to state a § 1983 claim.

This claim against Mr. Neal and Lt. Schwausch is frivolous and fails to state a claim for which relief can be granted and should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

### C.      **Disrespectful Treatment**

Dominique claims that the medical staff is disrespectful and laughs at the inmates when they seek medical care. In addition to his failure to identify a responsible party, his claim fails to state a claim redressable under § 1983.

It is well settled that mere comments, harsh words, and teasing by prison staff do not violate the Eighth Amendment. *See Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995); *Bishop v. Arcuri*, No. 09-CA-751, 2010 WL 11484314, at *5 (W.D. Tex. May 17, 2010) ("Defendants' off-color comments, inappropriate expressions, and rude behavior, even if perceived as offensive or degrading, do not run afoul of the Constitution."). Thus, any perceived joking or disrespectful comments or behavior exhibited towards Dominique by the medical staff does not rise to the level of deliberate indifference or other constitutional violation.

Furthermore, 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also Tate v. Gusman*, 459 F. Supp.2d 519, 524 (E.D. La. 2006). Dominique does not allege that he sustained a physical injury as a result of any alleged joking or laughter by the medical staff.

This claim against is frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A and § 1997e and must be dismissed.

### D.      **Eighth Amendment and Conditions of Confinement**

Dominique complains that the TPCJC has black mold, unsanitary food service, and insufficient religious materials in violation of his constitutional rights. For the followings reasons, he has not alleged or established a constitutional violation arising from the conditions of his confinement or medical care to recover under § 1983.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459. The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Dominique has not alleged a constitutional violation based on the conditions in TPCJC.

### 1.    <u>Black Mold and Cleanliness</u>

Dominique generally asserts that the TPCJC dormitory has black mold. He does not identify any particular physical injury or ailment that may have been impacted by alleged mold. Furthermore, there is no legal basis for the named defendants to be held liable for the conditions of the jail building itself.

Under Louisiana law, the presence of black mold at the jail may not be the responsibility of the sheriff or the individual jailers. Louisiana law divides the responsibility for its parish jails. The duty to administer and operate the jails falls on the sheriff of each parish. La. Rev. Stat. Ann. § 15:704. However, the Parish government is charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. Dominique has not named the Parish or a responsible Parish official as a defendant in this case.

Instead, Dominique has identified that the Sheriff and other jail officials without alleging that they were aware of the presence of mold, any uncleanliness, or any impact it may have had on him. He has not established the requisite personal involvement necessary to state a § 1983 claims against the defendants. *Douthit*, 641 F.2d at 346.

Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983. Dominique has not alleged a condition at the jail considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dampness, mold, and stale air do not amount to a constitutional violation. *See*, *e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D.

La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).  Even assuming

that such conditions existed, or that plaintiff had symptoms or other irritations associated with the

conditions at the jail, he has not established that any of the defendants intended a risk of serious

harm to his person or intentionally ignored that risk.  He has not stated a constitutional violation.

*See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008)

("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and

covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the

level of a constitutional violation.").  The mere presence of mold or need for daily cleaning in a

prison setting does not render an inmate's confinement unconstitutional.  *See*, *e.g.*, *Eaton v. Magee*,

No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the

bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a

constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex.

May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was

insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D.

Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan.

19, 2010) ("the presence of black mold in living areas, eating areas, and shower areas" are "no

more than a *de minimis* level of imposition with which the Constitution is not concerned.").

Dominique's claim is frivolous and otherwise fails to present a claim for which relief can

be granted.  The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

### 2. Food Service

Dominique claims that the food is not served hot because it is served from a cart instead of

warming trays, and the guards do not wear gloves to serve it.  His claim is frivolous.

An inmate has a constitutional right to receive reasonably adequate food while in prison. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 832). Constitutional standards require only that prison authorities provide an inmate with the basics in this regard, including "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). In this case, Dominique has not alleged a violation at this level.

Instead, under a broad reading of his complaint, he alleges only that he is being served warm rather than hot food. The Constitution does not require that an inmate be provided with particular consumables at a certain temperature or tastiness or with every culinary amenity which one may find desirable. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, *sub nom*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (citing *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977)). The Constitution also does not require that plaintiff receive particular amounts or kinds of food. *Green*, 801 F.2d at 770. "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

Dominique has not identified a violation of a constitutional or deprivation of reasonably adequate food at the TPCJC or that the manner of service is constitutionally substandard. His conclusory claim that he served bread eaten by rats is speculative and frivolous.

Thus, Dominique has not stated a non-frivolous claim or a claim for which relief can be granted. His claims should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

### 3.     Religious Materials and Bible Study

Dominique alleges that the prison lacks religious literature and bibles and he has trouble hearing bible study through the hatch hole of his dormitory.  His claims are frivolous and fail to state a claim for which relief can be granted.

First, Dominique claims the prison does not have religious reading materials or bibles.  In his referenced grievance complaints, he was advised they he could buy a bible or request one if he was indigent.  He does not indicated any effort to do either.  Nevertheless, "[t]he refusal to provide the demanded religious articles is well within the latitude in the administration of prison affairs which prison officials must be accorded."  *Frank v. Terrell*, 858 F.2d 1090, 1091 (5th Cir. 1988) (quotation marks omitted); *accord Mack v. Reynolds*, No. 797CV170R, 2000 WL 1808277, at *3 (N.D. Tex. Dec. 11, 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense.").  This facet of Dominique's claim is frivolous.

Although Dominique also complains that there is a lack of bible study, he concedes that bible study does occur, but he cannot always hear because of ambient noise in the dormitory.  The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits governmental conduct which unreasonably impinges upon the free exercise of an inmate's religious beliefs.  While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to reasonable restrictions and limitations necessitated by penological goals.  *DeMarco v. Davis*, 914 F.3d 383, 388-89 (5th Cir. 2019) (citing *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987)); *see also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

13

A prison action or regulation that impinges upon an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests.  *Turner*, 482 U.S. at 89.  In evaluating the reasonableness of a prison policy, a court should consider (1) the existence of a valid, "rational connection" between the state action and the legitimate governmental interest set out to justify it; (2) the availability of alternative means to exercise that right; (3) the impact an accommodation will have on guards, other inmates, and the allocation of prison resources, and (4) the absence of alternatives that fully accommodate the prisoner's right at a *de minimis* cost to valid penological interests.  *Turner*, 482 U.S. at 89-91.

In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith."  *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004).  "A court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective."  *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004) (internal quotation marks and citation omitted).  Due regard also must be given to the decisions of prison officials, because "'prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations.'"  *Turner*, 482 U.S. at 89 (omission and alteration in original) (citing *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)).

In this case, Dominique is not deprived of access to bible study.  Instead, he complains that bible study is not provided in the comfort or setting he desires.  Dominique does not allege that he is prohibited from practicing his religion or unable to employ additional alternative means of exercising his religious beliefs through, for example, buying or requesting a bible as he was

14

advised to do.  While Dominique may not be able to congregate or study in the specific manner he desires, he has not been "deprived of all forms of religious exercise" and may freely observe his religious customs.  *See O'Lone*, 482 U.S. at 352.

In addition, Dominique has not proposed some other accommodation for the prison to lessen any burden he perceives on his ability to participate in or hear the bible study offered.  *See Turner*, 482 at 90 ("[w]hen accommodation of an asserted right will have significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials").  Without some indication of a reasonable alternative provision that would not interfere with the administration of the prison, Dominique has not stated a viable claim under the First Amendment.

Thus, Dominique has not stated a non-frivolous claim or a claim for which relief can be granted.  His claims should be dismissed pursuant to § 1915, § 1915A, and § 1997e.

### 4.      Adequate Medical Care

Dominique complains that, although he regularly sees medical personnel, he is dissatisfied with the care he is receiving at or through the prison medical department.  His claims are frivolous.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle*, 429 U.S. at 104-105.  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference

requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).   Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.   *Estelle*, 429 U.S. at 104.   This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.   *Id*.   Thus, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.   *Id*.

However, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.   *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).   Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not.   *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).   Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."   *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Dominique has included by reference an attachment that constitutes proof that his requests for medical care have been taken seriously and promptly addressed by Mr. Neal and the medical staff at the prison.  He does not actually allege that he was denied any treatment or response from medical personnel.  Instead, he complains that he is not receiving the particular care and medicine he believes he should receive.  This disagreement over the type or amount of care does not establish an indifference to a serious medical need for purposes of the Eight Amendment. Dominique's disagreement and dissatisfaction with medical treatment fails to reach that level. *See, e.g.*, *Domino*, 239 F.3d at 756.  A healthcare provider's decision to provide different treatment or no treatment is a matter for medical judgment that is not without more to be second-guessed by a court.  *See Gobert*, 463 F.3d at 346.

For the foregoing reasons, Dominique's medical indifference claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e and, accordingly, should be dismissed.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Dominique's § 1983 complaint against the defendants, Sherriff Larpenter, Medical Director R. Petie Neal, and Lt. Schwausch be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[11]

New Orleans, Louisiana, this ____30th_____ day of March, 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[11]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.